UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANARA JEAN HOPPOCK, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-CV-02424 |
| v. | (MEHALCHICK, MJ) |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**MEMORANDUM**

Plaintiff Janara Jean Hoppock ("Hoppock") brings this action under sections 205(g) of the Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (incorporating § 405(g) by reference), seeking judicial review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Doc. 1). The matter has been referred to the undersigned United States Magistrate Judge on consent of the parties, pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. 5; Doc. 6).

For the reasons set forth below, and upon detailed consideration of the arguments raised by the parties in their respective briefs, it is hereby ordered that the Commissioner's decision to deny Hoppock benefits is **AFFIRMED**. **FINAL JUDGMENT** is entered in favor of the Commissioner. The Clerk of Court is directed to **CLOSE** this case.

I. **BACKGROUND AND PROCEDURAL HISTORY**

Hoppock is an adult individual born May 28, 1977, who was 40 years old at the time of his alleged onset date of disability – February 1, 2018. (Doc. 12-3, at 56). Hoppock's age at

the onset date makes her a "younger individual" under the Social Security Act. 20 C.F.R. §§ 404.1563(c), 416.963(c).

On July 23, 2018, Hoppock protectively filed applications under Title II and Title XVI of the Social Security Act, respectively, claiming disability beginning February 1, 2018. (Doc. 12-3, at 33). The Social Security Administration initially denied the applications on November 19, 2018, prompting Hoppock's request for a hearing, which Administrative Law Judge ("ALJ") Sharda Singh, held on January 31, 2020. (Doc. 12-2, at 13). In a February 21, 2020, written decision, the ALJ determined that Hoppock is not disabled and therefore not entitled to benefits or income under Title II or Title XVI. (Doc. 12-3, at 30). The Appeals Council subsequently denied Hoppock's request for review. (Doc. 12-2, at 2).

On December 24, 2020, Hoppock commenced the instant action. (Doc. 1). The Commissioner responded on July 6, 2021, providing the requisite transcripts from Hoppock's disability proceedings. (Doc. 11; Doc. 12). The parties have filed their respective briefs, with Hoppock raising two principal bases for reversal or remand. (Doc. 13; Doc. 18).

II. **STANDARD OF REVIEW**

To receive benefits under Titles II or XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1509, 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. §§ 423(d)(2)(A),

1382c(a)(3)(B); 20 C.F.R. §§ 404.1505(a), 416.905(a).[1] Additionally, to be eligible under Title II, a claimant must have been insured for disability insurance benefits. 42 U.S.C. § 423(a)(1)(a); 20 C.F.R. § 404.131.

A. ADMINISTRATIVE REVIEW

In evaluating whether a claimant is disabled as defined in the Social Security Act, the Commissioner follows a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the Commissioner must determine, in sequence: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do past relevant work, considering his or her residual functional capacity (RFC); and (5) whether the claimant is able to do any other work that exists in significant numbers in the national economy, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). The claimant bears the initial burden of demonstrating a medically determinable impairment that prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1512(a), 416.912(a). Once the claimant has established at step four that he or she cannot do past relevant work, the burden then shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform that are consistent with his or her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1512(a)(1), 416.912(a)(1).

---

[1] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

B. JUDICIAL REVIEW

The Court's review of the Commissioner's final decision denying a claimant's application for benefits is limited to determining whether the findings of the final decisionmaker are supported by substantial evidence in the record. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotations omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Hoppock was disabled, but whether the Commissioner's determination that Hoppock was not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of

the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III.   THE ALJ'S DECISION

In a decision dated February 21, 2020, the ALJ determined that Hoppock "has not been under a disability, as defined in the Social Security Act, from February 1, 2018, through the date of this decision." (Doc. 12-3, at 57). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a). At the outset, the ALJ determined that Hoppock met the insured status requirements of the Social Security Act through December 21, 2023. (Doc. 12-3, at 35).

#### A.   STEP ONE

At step one, an ALJ must determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If a claimant is engaging in SGA, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). SGA is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. §§ 404.1572, 416.972. The ALJ must consider only the earnings of the claimant. 20 C.F.R. §§ 404.1574(a)(2), 416.974(a)(2). Here, the ALJ determined that "[Hoppock] has not engaged in [SGA] since February 1, 2018, the alleged onset date." (Doc. 12-3, at 35). Thus, the ALJ proceeded to step two.

B. S<small>TEP</small> T<small>WO</small>

At step two, the ALJ must determine whether the claimant has a medically determinable impairment – or a combination of impairments – that is severe and meets the 12-month duration requirement. 20 C.F.R. §§ 404.1502(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Hoppock had the following severe, medically determinable impairments: Sjögren's syndrome, fibromyalgia, chronic pain syndrome, degenerative joint disease of the left knee, bilateral plantar fasciitis, personal tendonitis of the left lower extremity, an equinus deformity of both feet, irritable bowel syndrome, nonalcoholic cirrhosis of the liver, high blood pressure, obesity, obstructive sleep apnea, major depressive disorder, and generalized anxiety disorder. (Doc. 12-3, at 35-36). In addition, the ALJ determined that Hoppock had the following non-severe, medically determinable impairments: diabetes mellitus, gastroesophageal reflux disease, and leukopenia. (Doc. 12-3, at 36).

C. S<small>TEP</small> T<small>HREE</small>

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. P, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525, 404.1526, 416.920(a)(iii), 416.925, 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that

the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. §§ 404.1520(d), 416.920(d). The ALJ considered listings 1.02 (major dysfunction of a joint(s)), 4.00 *et seq.* (cardiovascular impairments), 5.05 (chronic liver disease), 5.06 (inflammatory bowel disease), 12.04 (depressive, bipolar and related disorders), 12.06 (anxiety and obsessive-compulsive disorders) and 14.10 (Sjögren's syndrome). (Doc. 12-3, at 36-40). Here, the ALJ determined that Hoppock did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (Doc. 12-3, at 36-37).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ determines the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all the claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529(a), 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable medical impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. §§ 404.1529(b)-(c), 416.929(b)-(c).

Here, the ALJ found that while Hoppock's impairments could reasonably be expected to cause the alleged symptoms, Hoppock's statements concerning the intensity, persistence,

and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 12-3, at 52-53).

Considering all the evidence in the record, the ALJ determined that Hoppock had the RFC "to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a)," subject to the following non-exertional limitations:

> [Hoppock] can occasionally climb stairs and ramps, but never climb ladders, ropes or scaffolds, and occasionally balance stoop, kneel, crouch and crawl. She must avoid hazards such as unprotected heights and moving machinery. She is limited to simple, repetitive, non-complex tasks.

(Doc. 12-3, at 43).

E. STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do the work. 20 C.F.R. §§ 404.1560(b), 416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform his past relevant work despite his limitations, he is not disabled." *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019) (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, after comparing Hoppock's RFC to the demands of Hoppock's past

relevant work as a receptionist and secretary, the ALJ found that Hoppock was unable to perform any past relevant work. (Doc. 12-3, at 56).

F. STEP FIVE

At step five, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Here, considering Hoppock's age, education, work experience, and RFC, the ALJ determined that there were jobs that existed in significant numbers in the national economy that Hoppock could have performed. (Doc. 12-3, at 56). In making this determination, the ALJ relied on the expertise of the vocational expert ("VE"), who testified that Hoppock could perform the requirements of occupations such as a ticket counter, call out operator, and an addresser, which are occupations with open positions ranging from 5,312 to 8,178 nationally. (Doc. 12-3, at 57). Accordingly, the ALJ determined that Hoppock was not disabled during the relevant period and denied her application for benefits. (Doc. 12-3, at 57).

IV. **DISCUSSION**

Hoppock raises two principal issues on appeal. (Doc. 13, at 2). First, Hoppock argues that substantial evidence does not support the ALJ's finding that a "significant number of jobs" existed that Hoppock could perform. (Doc. 13, at 4). Second, Hoppock argues that she was not afforded due process and equal protection of the law when the ALJ found that there was a significant number of jobs in the national economy that she could perform. (Doc. 13, at 7). In response, the Commissioner maintains that substantial evidence supports the ALJ's decision and that Hoppock was afforded due process and equal protection. (Doc. 18, at 2).

A. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S FINDING THAT A "SIGNIFICANT NUMBER OF JOBS" EXISTED THAT HOPPOCK COULD PERFORM.

Hoppock submits that "[t]he ALJ failed to do a proper analysis of the number of jobs to determine if such a small number was significant." (Doc. 13, at 4). In this case, the ALJ identified three jobs that Hoppock could perform, including the job of a ticket counter, call out operator, and addresser. (Doc. 12-3, at 57). In relevant part, the ALJ found that there were approximately 21,428 positions in the national economy, which constituted a significant number of jobs in the national economy. (Doc. 12-3, at 57).

Hoppock argues that the ALJ did not make any findings or elicit evidence that the jobs the VE identified existed in either region where Hoppock lives or in several regions of the country. (Doc. 13, at 4). The Commissioner asserts that despite Hoppock's argument, the ALJ was not required to obtain specific regional job numbers or provide greater articulation when she determined that there was a significant number of jobs in the national economy that Hoppock could perform. (Doc. 18, at 11). The Commissioner argues that the ALJ properly relied on the VE testimony because there is no evidence suggesting that the particular jobs are in "isolated regions of the country." (Doc. 18, at 12) (quoting *McCall v. Saul*, 844 F. App'x 640, 681 (4th Cir. 2021)).

At Steps 1 through 4 of the sequential evaluation process, Hoppock bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents her from engaging in any of her past relevant work. *Mason*, 994 F.2d at 1064. Once this burden has been met by Hoppock, it shifts to the Commissioner at Step 5 to show that a significant number of jobs exist in the national economy that Hoppock could perform that are consistent with the Hoppock's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1512(f),

416.912(f); Mason, 994 F.2d at 1064. Under the Social Security Regulations, "[w]ork exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [the claimant] is able to meet with [his or he] physical or mental abilities and vocational qualifications." 20 C.F.R. §§ 404.1566(a), 416.966(a). "Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where you live are not considered 'work which exists in the national economy.'" 20 C.F.R. §§ 404.1566(a), 416.966(a).

The Third Circuit has held that there is no precise estimate for what constitutes "significant numbers" of jobs under the Social Security Act. See Young v. Astrue, 519 F. App'x 769, 773 (3d Cir. 2013); see also 20 C.F.R. §§ 404.1566, 416.966. Courts, however, have found that 200 jobs in the regional economy is sufficient to establish the existence of work existing in significant numbers in the national economy. Craigie v. Bowen, 835 F.2d 56, 58 (3d Cir. 1987). Courts have also found that 20,000 jobs or more is enough. Young, 519 F. App'x at 772 (finding that 20,000 jobs is a significant number); Brininger v. Berryhill, No. 3:16-CV-00903, 2017 WL 3634187, at *15 (M.D. Pa. Aug. 7, 2017) (finding that 74,470 jobs is enough).

In this case, the Court finds that the ALJ did not err in finding Hoppock could work in jobs that exist in significant numbers in the national economy. At step five, considering Hoppock's age, education, work experience, and RFC, the ALJ concluded that Hoppock is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (Doc. 12-3, at 57). Specifically, the ALJ concluded that Hoppock could perform the following jobs: ticket counter (DOT# 219.587-010), with 5,312 jobs existing in the national economy; a call out operator (DOT# 237.367-014), with 7,938 jobs existing in

the national economy; and an addresser (DOT# 209.587-010), with 8,178 jobs existing in the national economy. (Doc. 12-3, at 57).

Hoppock argues that the ALJ erred in finding that the above-mentioned jobs existed in significant numbers in the national economy. (Doc. 13, at 4). Specifically, Hoppock relies on *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992), to argue that in order to determine whether 21,428 jobs constituted a significant number of jobs, the ALJ was required to consider various factors including: the level of the claimant's disability; the reliability of the VE's testimony; the distance the claimant is capable of traveling to engage in the assigned work; the isolated nature of the jobs; and the types and availability of such work. (Doc. 13, at 5). In *Trimiar*, the Tenth Circuit applied the factors identified in *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988), and determined that 650 to 900 jobs in the State of Oklahoma constituted a significant number of jobs. 966 F.2d at 1330.

When testimony is "provided that a significant number of jobs exists for which a claimant is qualified, it is immaterial that this number is a small percentage of the total number of jobs in a given area." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (citing *Walker v. Matthews*, 546 F.2d 814, 819 (9th Cir. 1976)). In this case, the ALJ elicited adequate testimony by the VE to find that jobs existed in the national economy that were appropriate for Hoppock. (Doc. 12-2, at 13). When presented with a hypothetical individual of the Hoppock's age, education, past work experience, and limitations, the VE testified that such a person would be unable to do any of the Hoppock's past work. (Doc. 12-2, at 38). The VE then identified approximately 21,428 jobs in the national economy that would be available for someone with Hoppock's RFC. (Doc. 12-2, at 39). In ruling that Hoppock was not disabled because she could make a successful adjustment to other work existing in significant numbers

in the national economy, the ALJ indicated that the conclusion was reached "[b]ased on the testimony of the vocational expert." (Doc. 12-3, at 57). "The logical conclusion, then, is that the ALJ, hearing the vocational expert's testimony about the number of jobs available in the national economy, found that those jobs constituted work existing in significant numbers in the national economy." *Lamoureux v. Comm. of Soc. Sec. Admin.*, No. 21-1677, 2021 WL 5860738, at *3 (3d Cir. Dec. 10, 2021).

As mentioned above, courts have held that 20,000 jobs or more is sufficient to establish the existence of work existing in significant numbers in the national economy. *See Craigie*, 835 F.2d at 58 (finding that 200 jobs is a significant number); *Young*, 519 F. App'x at 772 (finding that 20,000 jobs is a significant number); *Brininger*, 2017 WL 3634187, at *15 (finding that 74,470 jobs is enough). While 20 C.F.R. §§ 404.1566 and 416.966 do not define "significant numbers," the VE's testimony that approximately 21,428 jobs were available in the national economy supports a finding that work existed in significant numbers. *See Taskila v. Comm'r Soc. Sec.*, 819 F.3d 902, 906 (6th Cir. 2016) (concluding there was no reversible error where substantial evidence supported conclusion that claimant could perform jobs numbering 6,000 nationally); *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (holding that expert testimony that there were 10,000 jobs nationally was sufficient to show a significant number). There is nothing unreasonable about the ALJ's conclusion that Hoppock can perform "work that exists in significant numbers in the national economy." (Doc. 12-3, at 57)..

Accordingly, the Court finds that substantial evidence supports the ALJ's decision that there were a significant number of jobs Hoppock could perform.

B. THE PHRASE "SIGNIFICANT NUMBERS" IN 20 C.F.R. § 404.1566(A) AND § 416.966(A) IS NOT "VOID FOR VAGUENESS."

Hoppock asserts that the ALJ violated her rights to Due Process and Equal Protection under the Fourteenth Amendment. (Doc. 13, at 7). Hoppock argues that the phrase "significant numbers" in 20 C.F.R. § 404.1566(a) and § 416.966(a) is "void for vagueness" under the Fourteenth Amendment because there is no definition, guidance, or supplemental rule or regulation that explains what a "significant number" is in terms of jobs in the national economy. (Doc. 13, at 7). The Commissioner submits that Hoppock was afforded due process and equal protection because she was provided a full hearing and was able to present evidence and legal arguments with the assistance of her present counsel. (Doc. 18, at 18).

Recently, in *Lamoureux*, the Third Circuit declined to hold the phrase "significant numbers" in 20 C.F.R. § 404.1566(a) unconstitutional under the "void for vagueness" doctrine. 2021 WL 5860738, at *3. In that case, Lamoureux asked the court to vacate and remand the Commissioner's benefits determination because the phrase "significant numbers" in 20 C.F.R. § 404.1566(a) is unconstitutional under the "void for vagueness" doctrine. *Lamoureux*, 2021 WL 5860738, at *3. The court noted that 20 C.F.R. § 404.1566(a)'s use of "significant numbers" mirrors the fact that 42 U.S.C. § 423(d)(2)(A) does not define the phrase "disability." *Lamoureux*, 2021 WL 5860738, at *3. The court explained that the "void for vagueness" doctrine has no application to public-assistances provisions like section 423 because "[t]he doctrine is grounded in the need for 'fair notice' of a law's prohibitions when the law includes severe sanctions like imprisonment." *Lamoureux*, 2021 WL 5860738, at *3. Instead, the doctrine "ought to apply to civil proscriptions imposing 'similarly severe sanctions' like confiscating a home or stripping someone of a vital business license.

*Lamoureux*, 2021 WL 5860738, at *3 (citing *Sessions v. Dimaya*, 138 S. Ct. 1204, 1231 (2018) (Gorsuch, J., concurring in part and concurring in the judgment)). As section 423(d)(2)(A) is not a proscription backed by severe sanctions, the court found that it cannot be "void for vagueness" because "[e]xtending the void-for-vagueness doctrine to public-assistance statutes would divorce the doctrine entirely from the common-law tradition of fair notice that Justice Gorsuch identified as the source of the doctrine's legitimacy. *Lamoureux*, 2021 WL 5860738, at *3 (citing *Sessions*, 138 S. Ct. at 1225). Therefore, the court declined to hold 20 C.F.R. § 404.1566(a) void because then, it would necessarily have to hold the definition of disability in 42 U.S.C. § 423(d)(2)(A) void as well. *Lamoureux*, 2021 WL 5860738, at *3.

Based on the Third Circuit's recent decision in *Lamoureux*, and given the fact that the ALJ properly concluded that 21,428 jobs in the national economy constituted a "significant number" under 20 C.F.R. §§ 404.1566(a), 416.966(a), the Court finds that Hoppock's due process and equal protection claims also fail.

V.   **CONCLUSION**

Based on the foregoing, the Court **AFFIRMS** the Commissioner's decision to deny Hoppock disability benefits and directs that **FINAL JUDGEMENT BE ENTERED** in favor of the Commissioner and against Hoppock. The Clerk of Court is directed to **CLOSE** this case.

An appropriate Order follows.

**Dated: May 5, 2022**                                       *s/ Karoline Mehalchick*
                                                             **KAROLINE MEHALCHICK**
                                                             **Chief United States Magistrate Judge**